AO 91 (Rev. 11/11) Criminal Complaint

United States Courts
Southern District of Texas
FILED

June 22, 2020

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

| United States of America | ) |
| v. | ) |
| Jase DePaul Gautreaux, a/k/a Jase Dixon, a/k/a LeMarcus Dixon, a/k/a Jase Wingate | ) Case No. **4:20-mj-1106** |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 2020 to the present__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1014 | False Statements to Financial Institution |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1957 | Engaging in Prohibited Monetary Transactions |

This criminal complaint is based on these facts:

See attached affidavit of probable cause

☑ Continued on the attached sheet.

_/s/ signature_
Complainant's signature

Kyle Shadowens, US Postal Inspector
Printed name and title

Sworn to before me telephonically.

Date: June 22, 2020

_/s/ Frances H. Stacy_

City and state: Houston, Texas

Frances H. Stacy, US Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, U.S. Postal Inspector Kyle Shadowens, being first duly sworn, state:

### INTRODUCTION

1. I make this affidavit in support of a criminal complaint establishing probable cause for the arrest of Jase DePaul GAUTREAUX, also known as Jase Dixon, for committing the following offenses in the Southern District of Texas between April 2020 and the present:

   a. 18 U.S.C. § 1014, False Statements to a Financial Institution;

   b. 18 U.S.C. § 1343, Wire Fraud;

   c. 18 U.S.C. § 1344, Bank Fraud; and

   d. 18 U.S.C. § 1957, Engaging in Prohibited Monetary Transactions.

2. As described below, there is probable cause to believe that GAUTREAUX committed the above-listed offenses in connection with a bank and wire fraud scheme targeting the Paycheck Protection Program, a program created to address the economic fallout of the COVID-19 pandemic by providing forgivable loans to small businesses.

### AGENT BACKGROUND

3. I am employed as a federal law enforcement officer by the United States Postal Inspection Service. I have been employed as a federal law enforcement officer since 2013 and am assigned to the Financial Crimes/Mail Fraud team in the Houston Division of the United States Postal Inspection Service. I am responsible for conducting and have conducted many investigations into fraud, identity theft, and related "white collar" types of offenses. I have been licensed as an attorney by the State Bar of Texas since 2010 and am a Certified Fraud Examiner. I have received training in numerous Postal crimes, but primarily those involving "identity theft",

"white collar", mail fraud, wire fraud, and bank fraud related offenses. I am authorized to obtain and execute Federal Arrest and Search Warrants.

4. The information presented in this affidavit is based on my own personal investigation and the investigation of other law enforcement officers, which was communicated to me orally or via written communication. The facts set forth do not constitute all that has been learned in the course of the investigation but only enough to establish that probable cause exists for the issuance of a complaint and arrest warrant for GAUTREAUX.

## OVERVIEW OF THE SCHEME AND THE PAYCHECK PROTECTION PROGRAM

### *Overview of the Paycheck Protection Program*

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, up to $310 billion in additional PPP funding was authorized by Congress.

6. The PPP allows qualifying small businesses and other organizations to receive loans with a maturity of 2 years and an interest rate of 1%. PPP loan proceeds must be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses within a set period of time and uses a certain portion of the PPP loan funds towards payroll expenses. The amount of PPP funds a business may receive is determined by the number of employees employed by the

business and their average payroll costs for a period of eight weeks. Businesses applying for a PPP loan must provide documentation showing their payroll expenses.

7. The PPP is overseen by the Small Business Administration ("SBA"). Individual PPP loans, however, are issued by private approved lenders (most commonly, banks and credit unions), who receive and process PPP applications and supporting documentation, and then make loans using their own funds. To date, over 4,900 lending institutions have participated in the PPP.

### *Background of GAUTREAUX and Overview of the Scheme*

8. GAUTREAUX is a resident of Houston, Texas. Open-source research indicates that he is a funeral director at Wingate Funeral Home, which operates from a storefront on Almeda Road.

9. GAUTREAUX has been arrested numerous times in Texas under the names Jase GAUTREAUX, Jase Dixon, and other aliases. GAUTREAUX's criminal history includes convictions for fraud, forgery, and theft.

10. Between April 2020 and the present, GAUTREAUX submitted several materially false loan applications to financial institutions in order to wrongfully obtain funds from the PPP program. On all but one of these loans, GAUTREAUX falsely presented himself as an individual named Joshua Prado (often spelled as Joshua Pedro). GAUTREAUX further claimed to be submitting the applications on behalf of businesses that either: (a) did not exist; or (b) with which GAUTREAUX had no association. Further, on one additional PPP loan application, GAUTREAUX applied for money on behalf of a funeral home with which he was affiliated. However, on this application, GAUTREAUX misrepresented his criminal history, the size of the company, and the company's payroll in order to obtain money that would not have been provided had GAUTREAUX been truthful.

3

## Relevant Financial Institutions and Related Entities

11. Bank 1 is a federally insured financial institution. Bank 1 is an approved SBA lender and has participated as a lender in the PPP. Bank 1 received a PPP loan application on behalf of "ENI Marketing Inc."

12. Bank 2 is a federally insured financial institution. Bank 2 is an SBA Nationwide Preferred Small Business Lender and has participated as a lender in the PPP. Bank 2 received a PPP loan application on behalf of "ENI Operation Co".

13. Bank 3 is a federally insured financial institution at which GAUTREAUX held a personal checking account.

14. Bank 4 is a federally insured financial institution at which GAUTREAUX held a business account for Wingate Funeral Service Group. Bank 4 is also an approved SBA lender and has participated as a lender in the PPP. Bank 4 received a PPP loan application on behalf of "Wingate Funeral Service Group."

15. Banks 5 through 8 are federally insured financial institutions.

16. Companies 1 and 2 are brokers in the business of helping borrowers find lenders to support their specific funding needs.

17. Companies 3 and 4 are approved SBA lenders and have participated as lenders in the PPP.

## The PPP Loan Application to Bank 1

### *Background Relating to the Application*

18. According to information received by Bank 1, on April 29, 2020, a PPP loan application was submitted to Bank 1 on behalf of "ENI Marketing Inc." in Houston, Texas ("Bank

4

1 PPP Application"). This application requested a PPP loan of $1,626,250. Bank 1 approved the loan and disbursed the funds, but the majority of the money was later returned to Bank 1.

19. Based on information obtained by the SBA, it appears that Bank 1 received the Bank 1 PPP Application and supporting documents through Company 1.

20. The Bank 1 PPP Application identifies the 100% owner of ENI Marketing Inc. as Joshua Pedro, and it provides an address of 8700 Woodway 167, Houston, TX 77063.

### *False and Suspicious Statements on the Bank 1 Application*

21. Investigation has revealed that numerous statements on the Bank 1 PPP Application appear to be false and suspicious.

22. According to Texas Secretary of State records, ENI Marketing Inc. is a foreign for-profit corporation. It does not currently have the right to do business in the State of Texas. A search on the Texas Comptroller of Public Accounts website revealed that ENI Marketing Inc. was registered as a business in Texas in 1999. It has since forfeited its right to do business in the state. It is a subsidiary of Eni S.p.A, a global oil and gas conglomerate headquartered in Rome, Italy. Eni S.p.A. operates in North America through a subsidiary called ENI US Operating Co. Inc. Eni S.p.A. employs over 30,000 people worldwide and is not a qualifying small business for the purposes of the PPP.

23. The Bank 1 PPP Application provides a business contact phone number of 713-539-2435. This is a Sprint cellular phone number. Records received from the wireless provider reveal that 713-539-2435 is registered to Jase GAUTREAUX.

24. On or about May 27, 2020, investigators spoke with legal counsel for ENI US Operating Co. Inc. Counsel stated that 713-539-2435 has no known affiliation with any ENI-related entity.

25. Further, 713-539-2435 is listed as a contact number for an account at Bank 4 in the name of "Jase DePaul Gautreaux DBA Wingate Funeral Service Group." In several recorded conversations with Bank 4, GAUTREAUX identified himself and gave his phone number as 713-539-2435. The most recent of these conversations occurred on May 29, 2020.

26. The Bank 1 PPP Application provides an email address of metroh5300@gmail.com. This is a free Gmail account. It is not an Eni-affiliated business account, as those accounts generally bear a suffix of eni.com.

27. Although the Bank 1 PPP Application lists ENI Marketing Inc.'s owner as "Joshua Pedro," the driver license and social security card submitted along with the application package belong to Joshua Prado. Thus, it appears that the name of the putative business owner is misspelled throughout the application.

28. Legal counsel for ENI US Operating Co. Inc. said that the only entity named ENI Marketing of which he is aware is a holding company with no employees and no payroll expenses. Counsel also confirmed that this entity has not applied for a PPP loan.

29. Counsel for ENI US Operating Co. Inc. further stated that Joshua Prado has no known affiliation with any Eni-related entity. Prado is not the owner of any Eni-related entity.

30. The Bank 1 PPP Application lists the address of ENI Marketing Inc. as 8700 Woodway Dr #167, Houston, TX 77063. This is not an address associated with any Eni-related entity. Rather, it corresponds to a residential apartment in an apartment complex. ENI US Operating Co. Inc. has a true business address of 1200 Smith Street, Suite 1700, Houston, Texas 77002.

31. Surveillance indicates that the address of 8700 Woodway, Apartment 167, is GAUTREAUX's residence. In June 2020, agents saw GAUTREAUX enter apartment 167.

Further, federal agents identified a vehicle registered to GAUTREAUX at this address, and they have seen GAUTREAUX enter and leave the apartment complex multiple times.

32. The Bank 1 PPP Application lists the average monthly payroll for ENI Marketing Inc. as $650,500 and identifies the total number of employees as 10. Again, ENI Marketing Inc. is not an active company in the State of Texas. As in-house counsel explained, ENI Marketing Inc. has no employees and thus no payroll and has not applied for a PPP loan.

33. The supporting documents submitted in furtherance of the Bank 1 PPP Application also bear indications of fraud. For instance, the applicant provided the first page of a bank statement for an account at Bank 3, putatively in the name of "ENI PETRO" with an address at 8700 Woodway Dr 167, Houston, Texas 77063. A Bank 3 representative stated that this document was false and that Bank 3 does not hold a business account for an entity called ENI Petro. The member number on the document belongs to a personal account held by Jase GAUTREAUX.

34. Along with the Bank 1 PPP Application, the applicant also provided a voided check on which the account holder was listed as "ENI, Houston Texas 77021." The account number on the check belongs to the same Bank 3 account in GAUTREAUX's name that was utilized to create the forged bank statement.

35. Further, the PPP loan applicant transmitted to Bank 1 an IRS Form 940, which is an employer's annual federal unemployment tax return. The Form 940 listed ENI Marketing's unemployment tax as $35,934.28 before zero adjustments, yet incorrectly reports the tax after adjustments as $1,256,240.33.

36. On or about May 4, 2020, a loan officer at Bank 1 emailed metroh5300@gmail.com—the email address listed on the PPP loan application—to request copies of ENI Marketing Inc.'s articles of incorporation and business license. A response that same day

from metroh5300@gmail.com included a photograph of a document that bears multiple hallmarks of forgery. Although the sender of the email wrote that the document was "our article of incorporation," it in fact bears the title "Certificate of Filing." This document states that "ENI Corporation" has filed a certificate of formation to operate as a limited liability company in Texas. Again, the entity named in the Bank 1 PPP Application is ENI Marketing Inc., not ENI Corporation. Additionally, the document lists a file number, but when investigators ran this file number in the relevant Texas state database, it returned no results. The document also claimed to be dated and effective in 1999, but it bears the name and signature of the current Texas Secretary of State, not the person who occupied that position in 1999. Further, the size and style of font used for the entity name, the dates, and the file number do not match the rest of the document.

37.   On or about May 6, 2020, a Bank 1 loan officer emailed metroh5300@gmail.com to ask for tax forms for all employees making over $100,000 per year. The user of the email account responded, "Nobody makes over 100k!" This statement is inconsistent with the representation about payroll made in the Bank 1 PPP Application. As mentioned above, in that document, the applicant listed the average monthly payroll expenses of ENI Marketing Inc. to be $650,500 for 10 employees. This equates to average pay of $65,050 per employee each month, or average annual pay of $780,600 for each employee.

### *Disbursement and Use of the PPP Loan Funds from Bank 1*

38.   On or about May 8, 2020, GAUTREAUX's Bank 3 account received a deposit of $1,626,250 for a PPP loan originating at Bank 1. This Bank 3 account is the same account tied to the forged bank statement and check, discussed above.

39. On or about May 11, 2020, approximately $700,000 was moved from GAUTREAUX's Bank 3 account into the Bank 4 account in the name of "Jase DePaul Gautreaux DBA Wingate Funeral Service Group."

40. Subsequent to receiving the $700,000 transfer, GAUTREAUX's account at Bank 4 was frozen. In a recorded phone call, a Bank 4 representative asked GAUTREAUX to explain the origin of the $700,000 deposit. GAUTREAUX stated it "was a loan." He then elaborated that "the loan came from my partner. We've got another business, so we pulled the money from that account and put it into the Wingate account." GAUTREAUX was then asked to provide his business partner's name. He responded "yeah, goddamn," and then said he would call back with additional information about the $700,000 deposit. GAUTREAUX never provided any further details about the deposit to Bank 4.

41. Additionally, around the same time, a check for $284,800 was written on GAUTREAUX's Bank 3 account and sent to a vehicle dealer in New York for the purchase of two hearses and two limousines. The seller of the vehicles advised that the buyer was Jase GAUTREAUX, who utilized the phone number 713-539-2435. Although GAUTREAUX sent the check, the sale was never completed, and the check was not deposited.

42. Ultimately, the PPP loan deposit was reversed, and most of the $1,626,250 was returned to Bank 1.

### The PPP Loan Application to Bank 2

*Background Relating to the Application*

43. According to information received by Bank 2, on or about April 27, 2020, a PPP loan application was submitted to Bank 2 on behalf of "ENI Operation Co" in Houston, Texas ("Bank 2 PPP Application"). This application requested a PPP loan of $2,068,200.

9

44. Based on information obtained by the SBA, it appears that Bank 2 received the Bank 2 PPP Application and supporting documents through Company 2.

45. The Bank 2 PPP Application lists Josh Prado as the 100% owner of ENI Operation Co, and it provides a business address of 8700 Woodway 167, Houston, TX 77063.

### *False and Suspicious Statements on the Bank 2 PPP Application*

46. Investigation has revealed that the ENI Operation Co PPP loan application is riddled with an array of statements that appear to be false and suspicious. Many of these are identified below.

47. A business records search revealed that ENI Operation Co is not the legal name of any business entity in the State of Texas. The tax identification number on the Bank 2 PPP Application corresponds to ENI Petroleum US LLC, a subsidiary of Eni S.p.A. As mentioned in paragraph 13, above, Eni S.p.A. is an Italian oil and gas conglomerate that employs over 30,000 people across the globe.

48. The Bank 2 PPP Application provides 281-932-0305 as the contact phone number for ENI Operation Co. This is a Sprint cell phone number registered to Jase Dixon at 8700 Woodway Dr, Houston, TX 77063. Jase Dixon is known to be an alias of GAUTREAUX.

49. Counsel for ENI US Operating Co. Inc. stated that this phone number has no known affiliation with any ENI-related entity.

50. The loan application lists the address of ENI Operation Co as 8700 Woodway 167, Houston, TX 77063. As discussed above, this is the address of a residential apartment and is not associated with any Eni-related entity.

51. As noted above, surveillance indicates that the address of 8700 Woodway, Apartment 167, appears to be GAUTREAUX's residence.

52. As mentioned previously, the Bank 2 PPP Application identifies Josh Prado as the owner of ENI Operation Co. Counsel for ENI US Operating Co. Inc. further explained that Joshua Prado has no known affiliation with any Eni-related entity. Prado is not the owner of an Eni-related entity.

53. The application lists an email address of dunvaletx@gmail.com. This is a free Gmail account. It is not an Eni-affiliated business account, as those accounts generally bear a suffix of eni.com.

54. The Bank 2 PPP Application lists the average monthly payroll for ENI Operation Co as $827,280 and identifies the total number of employees as 27. Again, ENI Operation Co does not exist. In-house counsel explained that ENI US Operating Co. Inc. has over 200 employees in the United States and that the $827,280 amount does not correspond to the known payroll expenses of any Eni-affiliated entity.

55. Further, it appears that falsified supporting documentation was provided to Company 2 and Bank 2 in connection with the Bank 2 PPP Application.

56. As one example, on or about April 27, 2020, the applicant provided a Company 2 employee a 2019 IRS Form 941, which is an employer's quarterly federal tax return. This form is incomplete, inconsistent, and appears fraudulent. For instance, the form does not indicate the quarter of 2019 to which it purportedly pertains. On May 11, 2020, a credit officer at Bank 2 noted that the calculations in this form are "wholly inconsistent" with a business of the purported size of ENI Operation Co.

57. That same day, the applicant also sent a Company 2 employee an IRS Form 940, which is an employer's annual federal unemployment tax return. The Form 940 was in the name of ENI, not ENI Operation Co, and appeared to list an incorrect number for ENI's unemployment

tax liability. The credit officer from Bank 2 noted that the Employer Identification Number ("EIN"), which is listed on both the Forms 940 and 941, "…belongs to ENI Petroleum US LLC which is a US Based subsidiary an Italian Energy company ENI. ENI has 31,321 employees across the globe. Our applicant doesn't own it."

58.   Both the Form 940 and 941 appear to be signed in the name of "Joshua Pedro." This is inconsistent with the name on the Bank 2 PPP Application and the Texas driver license submitted therewith, which is Joshua Prado.

59.   Bank 2 provided investigators a "Corporation Certificate of Authority" dated April 28, 2020, certifying that ENI Operation Co is duly organized in the state of Texas and that the Board of Directors had authorized "Joshua Pedro"—not Joshua Prado as reported on the Bank 2 PPP Application—to sign all promissory notes, agreements and other documents. This document was electronically signed by Joshua Pedro. An audit trail supporting this document reflects that the document was viewed and signed through the dunvaletx@gmail.com email address associated with Bank 2 PPP Application.

60.   On May 29, 2020, an email was sent from the dunvaletx@gmail.com address to a Bank 2 employee, claiming that "We have 39 employees all based here in the USA." This is inconsistent with the Bank 2 PPP Application, which stated that ENI Operation Co had 27 employees. Further, in this email, the user of the email account reiterated that the entity's business address is "8700 Woodway Dr Suite 167."

*Phone Call Between Bank 2 and the Loan Applicant*

61.   On May 29, 2020, a Bank 2 employee spoke on the telephone with the PPP loan applicant, who investigators believe was GAUTREAUX. The PPP loan applicant called Bank 2 from 713-539-2435 which, as discussed above, is registered to GAUTREAUX. Investigators have

reviewed a recording of this call and have identified several statements by the loan applicant that appear to be false and suspicious.

62. Early in the call, the caller stated to the Bank 2 employee that he "can always be reached on" 713-539-2435. He also explained that "the 281-932 number should have been coming over to this line." Investigators believe that the 281-932 number is 281-932-0305, which was listed as the phone number for ENI Operation Co on the Bank 2 PPP Application.

63. Later in the call, the caller said that "the 281-932 number is the company's main line" and "the 713 number is my personal line with the company." He further explained that "these are both company phones." As mentioned above, neither of these phone numbers is affiliated with any ENI-related entity. 281-932-0305 is a cell phone registered to Jase Dixon; 713-539-2435 is a cell phone in the name of Jase GAUTREAUX.

64. When asked to state his name, the caller said, "my first name is Joshua and my last name is Pedro." He thereafter claimed that his last name was Prado. As discussed above, the Bank 2 PPP Application listed the owner of ENI Operation Co as Josh Prado, but on documents relating to both PPP loan applications discussed in this affidavit, the applicant alternated between the last names Prado and Pedro.

65. The caller also provided a tax identification number that did not match the number listed on the Bank 2 PPP Application.

66. The caller reiterated that he was the 100% owner of the company in question. He further stated that he owned no other companies, although the two PPP loan applications discussed herein reference two companies with differing names, numbers of employees, and payroll expenses, both putatively owned by the same person.

67. The caller also claimed that he had not applied for any other PPP loans. In fact, investigation has revealed that the applicant submitted several PPP loan applications, including those discussed in this affidavit.

68. Additionally, the caller stated that he had no felony or misdemeanor convictions, although GAUTREAUX does in fact have a criminal history in the State of Texas.

69. The caller also stated that he wanted to change the account receiving the loan funds to a bank account from Bank 5. He then provided a routing number, account number, and account name of "ENI." Subsequent to this call, the applicant emailed a purported Bank 5 bank statement bearing the customer name "ENI" to a Bank 2 employee. In a subsequent communication with law enforcement, a Bank 5 representative confirmed that this bank statement was forged.

70. The Bank 2 employee asked the caller to explain why the Bank 2 PPP Application stated that ENI Operation Co had 27 employees, while the subsequent email to Bank 2, discussed in paragraph 56, claimed 39 employees. The caller asserted that "initially I didn't add in the ones that were mobile." He then said, "that should have been a correction, but I would hate for five or six extra employees to throw a whole application off."

71. Bank 2 ultimately declined to fund the loan requested in the Bank 2 PPP Application.

### Additional Applications Using Joshua Prado's Personal Information

72. In addition to the loans discussed above, GAUTREAUX appears to have initiated applications for at least five other PPP loans in which he used Joshua Prado's name and claimed to be submitting on behalf of an Eni-related entity. All of these loans utilized the dunvaletx@gmail.com account listed on the Bank 2 PPP Application. Investigators do not currently have evidence that any of these loans were funded. The additional loans are:

| Lender/Broker | Date of application or earliest communication | Dollar amount |
|---|---|---|
| Bank 6 | 4/28/20 | $4,910,187.00 |
| Bank 7 | 5/31/20 | $1,511,387.50 |
| Company 3 | 5/31/20 | Unknown |
| Bank 8 | 5/31/20 | $1,511,387.50 |
| Company 4 | 5/31/20 | $1,511,387.50 |

### The PPP Loan Application to Bank 4

73. Additionally, GAUTREAUX sought and received a PPP loan on behalf of Wingate Funeral Home ("Wingate") for $130,800 from Bank 4 ("Bank 4 PPP Application"). Although Wingate is an actual entity, the loan application GAUTREAUX submitted contains multiple material false statements.

74. First, GAUTREAUX certified that he had no disqualifying felonies, but in fact, he has several felony convictions, any one of which would prohibit him from obtaining a PPP loan.

75. Second, GAUTREAUX listed Wingate's total number of employees as 10. Records from the Texas Workforce Commission indicate no employment records for Wingate.

76. Third, GAUTREAUX stated that Wingate was established in December 2018, but records from the Texas Comptroller's office show that Wingate was not registered to do business until November 21, 2019.

77. Finally, a tax form submitted in support of the application stated that Wingate paid $869,500 in wages in 2019. But records indicate that it would not have been possible for Wingate to pay such a high amount in wages in 2019. A second supporting document lists Wingate's employees and their hourly rate. Based on that document, Wingate has five employees who earn

wages ranging from $37 to $180 per hour. If all five of these employees were working at the listed rate, it would take them 1967 hours to earn $869,500 in pay. But from the date of Wingate's founding on November 21, there were only 41 days—or 984 hours—left in 2019. So even if all five employees worked every single hour from the date the business opened until the end of the year, they would still get only halfway to the claimed $869,500 wage amount. Thus, the wages listed in the application appear to be false.

## CONCLUSION

78.     In total, evidence indicates that GAUTREAUX submitted at least eight false PPP applications, seeking to fraudulently obtain over $13 million from the SBA. While most of these loans were denied, GAUTREAUX was able to get two of them approved by lenders, thereby fraudulently obtaining more than $1.7 million. For all but one of these loans, evidence indicates that GAUTREAUX misappropriated the identity of another person.

79.     Based on the foregoing, I submit that there is probable cause that, between April 2020 and the present, GAUTREAUX committed the crimes identified in paragraphs 1.a. through 1.d. Therefore, I request that a criminal complaint be issued, along with a warrant for GAUTREAUX's arrest.

## REQUEST FOR SEALING

80.     I further request that the Court order that all papers in support of this complaint, including the affidavit and arrest warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise

seriously jeopardize the investigation.

Respectfully submitted,

Kyle Shadowens
United States Postal Inspector

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 22, 2020, and I find probable cause.

**Frances H. Stacy**
UNITED STATES MAGISTRATE JUDGE